UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE<br><br>**TERRANCE MAURICE WEBSTER**<br><br>Debtor | Case Number: 23-13269-amc<br><br>Judge: Hon. Ashely M. Chan<br><br>Hearing Date: **03/12/2024**<br>Time: **11:00 a.m.**<br>Place: **Courtroom #4** |

**TRANSPORT FUNDING, LLC'S CONSENT MOTION FOR ADEQUATE PROTECTION PAYMENTS.**

TRANSPORT FUNDING, LLC, by and through its attorney, Thomas R. Dominczyk, Esq., files this present Consent Motion for adequate protection payments, and in support thereof hereby avers the following:

## GENERAL BACKGROUND

1.  On or about July 25, 2022, Terrance Maurice Webster (hereinafter referred to as the "Debtor") and Lawrence M. Webster, Jr. (hereinafter referred to as the "Co-Debtor") executed a Security Agreement (Conditional Sale Contract) (hereinafter referred to as the "Agreement") for the purchase of a 2017 Kenworth T680 Tractor, VIN: 1XKYDP9X0HJ139121 (hereinafter referred to as the "Collateral"). A copy of the Agreement is attached hereto and marked as Exhibit A.

2.  Thereafter, the Creditor perfected its lien on the Collateral. A copy of the title indicating the Creditor's lien is attached hereto and marked as Exhibit B.

3.  Creditor is the assignee of Arrow Truck Sales, Inc., the original creditor on both Agreements.

4.  At all times relevant, the Creditor, was and still is the first lien holder of the Collateral, and at no time was there ever a transfer of the lien to the debtor or any other party.

5. The Debtor and Co-Debtor have stopped making payments on the Agreement with the last payment being made on October 25, 2022.

6. The Debtor's proposed chapter 13 plan (hereinafter referred to as the "Plan") provides to pay the Creditor $140,696.65 inclusive of interest over the life of his 60 month plan. A copy of the Plan is attached hereto as Exhibit "C".

## GROUNDS FOR ADEQUATE PROTECTION PAYMENTS

7. The Debtor and Co-Debtor have failed to make payments under the agreement when due. The total amount due in order to bring the account current was $42,356.15 as of the date of fling.

8. Pursuant to the Debtor's proposed plan, he will pay $3,025.00 per month to the trustee for a total of 60 moths.

9. Currently the plan only provides for payment of $2,725 in priority claims before distributions are to be made to secured creditors of which Transport Funding is the majority creditor.

10. However, since the proposed plan was filed, taxing authorities have filed priority claims totaling $28,723.72 and secured claims totaling $297,158.11 which will greatly impact the timing of payments to Transport Funding.

11. Pursuant to 11 U.S.C. § 361 the court can order the debtor to make adequate protection payments in order to protect the decreasing value of the collateral.

12. Here Debtor has agreed to pay Transport Funding an adequate protection payment of $1,000 per month which is less than one third of the monthly payment on the Agreement with said payment to be made by the Chapter 13 Trustee from funds received from the Debtor.

WHEREFORE, TRANSPORT FUNDING, LLC respectfully requests that this Honorable Court order the Chapter 13 Trustee to make monthly adequate protection payments to the Creditor in the amount of $1,000.00 effective February 5, 2024 and continuing until such time as regular

monthly payments are made to Transport Funding on its secured claim after confirmation with the Debtor being given a credit toward the secured claim for adequate protection payments that are paid.

        Respectfully submitted,
        MAURICE WUTSCHER, LLP

DATED: 02/09/2024

        By /s/ Thomas R. Dominczyk
          Thomas R. Dominczyk, Esq.
          5 Walter E. Foran Blvd., Suite 2007
          Flemington, NJ 08822
          (908) 237-4550

# Exhibit "A"

**TRANSPORT FUNDING**
*A Transport Funding Program*

# Security Agreement
## (Conditional Sale Contract)

| Buyer Name: | TERRANCE M WEBSTER | Co-Buyer Name: | LAWRENCE M WEBSTER JR | Agreement Date: | 7/25/2022 |

The undersigned buyer and co-buyer, if any, meaning all buyers jointly and severally ("Buyer"), having been quoted both a time sale price and cash sale price, has elected to purchase and hereby purchases from the undersigned seller ("Seller") for the time sale price shown below, under the terms and provisions of this Security Agreement (Conditional Sale Contract)(the "Agreement"), the following described property, (herein, with all present and future attachments, accessories, replacement parts, repairs, additions, and all proceeds thereof, referred to as ("Collateral"):

| Stock # | Year | Manufacturer | Model | Description | Serial Number |
|---|---|---|---|---|---|
| 254553 | 2017 | KW | T680 | RAISED ROOF SLEEPER | 1XKYDP9X0HJ139121 |

Collateral Will Be Kept At: (Address) 1137 S 56TH ST    (City,County,State) PHILADELPHIA, PHILADELPHIA, PENNSYLVANIA

**LOAN AND COLLATERAL PROTECTION OPTIONS**
Please check one box for each category

**A. PHYSICAL DAMAGE INSURANCE** COVERING THE COLLATERAL IS REQUIRED; HOWEVER, Buyer has the option of furnishing the required insurance through an agent or broker of Buyer's choice. If accepted:

[X] Accept    [ ] Decline

Buyer(s) requests and authorizes Seller to obtain comprehensive and collision insurance coverage on the Collateral for __49__ months from the date of this agreement, and for the premium of $ 18,594.78

**B. DEBT WAIVER**, if included, is not a factor in the approval of credit and is not required by the Seller and is for the term of the credit only.

[X] Accept    [ ] Decline

Buyer(s) requests and authorizes Seller to obtain Debt Waiver for the term of this agreement for the premium of $ 2,299.33

**C. GAP PROTECTION**, if included, is not a factor in the approval of credit and is

[X] Accept    [ ] Decline

Buyer(s) requests and authorizes Seller to obtain GAP Protection for the term of this agreement for the premium o $ 675.00

Description of Trade-In:
| Year | Manufacturer | Model | Serial Number |
|---|---|---|---|

Gross Allowance: 0.00
LESS Amount Owed to: 0.00
Trade-In (Net Allowance): 0.00

| | |
|---|---|
| 1. CASH SALE PRICE | 110,135.00 |
| 2. (a) Cash Down Payment | 32,000.00 |
| (b) Trade-In Net Allowance | 0.00 |
| TOTAL DOWN PAYMENT (a + b) | 32,000.00 |
| 3. UNPAID BALANCE OF CASH SALE PRICE (1 - 2) | 78,135.00 |
| 4. OTHER CHARGES | |
| (a) Physical Damage | 18,594.78 |
| (b) Debt Waiver | 2,299.33 |
| (c) GAP Waiver | 675.00 |
| (d) UCC Filing Fee | 0.00 |
| (e) Administrative Fee | 500.00 |
| (f) Other Fee | 0.00 |
| (Describe) | |
| TOTAL OTHER CHARGES (a + b + c + d + e + f) | 22,069.11 |
| 5. PRINCIPAL BALANCE (3 + 4) | 100,204.11 |
| 6. FINANCE CHARGE | 48,154.17 |
| 7. UNPAID TIME BALANCE (5 + 6) | 148,358.28 |
| 8. TIME SALE PRICE (1 + 4 + 6) | 180,358.28 |

**BUYER AND/OR CO-BUYER AGREES TO PAY FOR THE ITEMS ACCEPTED**

Buyer: *[DocuSigned signature]* 7E9B0098D96438...
Co-Buyer: *[DocuSigned signature]* 70845446134347C...

Buyer's Initials *[initials]*    Co-Buyer's Initials *[initials]*    Page 1 of 5

The original document is owned by Transport Funding LLC and this copy was created on Jul 26, 2022 08:19:50 AM.

DocuSign Envelope ID: D94503BD-5470-4C3D-B5F0-D760FE647172    Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 23-13269-amc    Doc 28    Filed 02/09/24    Entered 02/09/24 17:23:32    Desc Main
Document    Page 6 of 19

PAYMENT SCHEDULE: Buyer promises to pay Seller the UNPAID TIME BALANCE (Item 7 above) in __49__ installments as follows:
(Total No. of installments)

*For equal successive Monthly installments:* (a) $ 3,027.72 on 9/9/2022 and a like sum on the like date of each month thereafter until fully paid, provided, however, that the final installment shall be in the amount of the remaining unpaid balance, or if blank, then:

*For other than equal Successive monthly Installments:* (b)

A. COLLATERAL USE. BUYER REPRESENTS AND WARRANTS TO SELLER THAT THE COLLATERAL SHALL BE USED SOLELY FOR BUSINESS PURPOSES. Buyer warrants and agrees that: the Collateral was delivered to and accepted by Buyer in satisfactory condition; the Collateral will be used solely for business purposes; the Collateral is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; notwithstanding Seller's claim to proceeds, Buyer will not, without Seller's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Collateral, nor will Buyer permit any such act; the Collateral will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Buyer's business and in conformity with all applicable governmental laws and regulations; the Collateral shall remain personal property and not become part of any real property regardless of the manner of affixation; Seller may inspect the Collateral at all reasonable times and from time to time; and the Collateral will be kept by Buyer at the location set forth for it on the face hereof and will not be removed from said location without the prior written consent of Seller, except that an item of Collateral which is mobile and of a type normally used at more than one location may be used by Buyer away from said location in the regular course of Buyer's business provided that if such item is not returned to said location within 30 days, Buyer will immediately thereafter, and each 30 days thereafter until the item is returned, report the then current location thereof to Seller in writing.

B. COLLATERAL PRESERVATION. Buyer agrees, at its own cost and expense: to do everything necessary and expedient to perfect and preserve the security interests of Seller obtained hereunder; to defend any action, proceeding or claim affecting the Collateral, including but not limited to any forfeiture action or proceeding; to pay all expenses incurred by Seller in enforcing its rights after the occurrence of an event of default hereunder, including payment of the reasonable fees of any attorneys retained by Seller; to immediately repay to Seller any amounts paid by Seller in the enforcement or administration of its rights under this Agreement, including without limitation any amounts paid by Seller to a depository institution because a check, draft, or order made or drawn by or for the benefit of Buyer is returned unpaid for any reason; and to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the Collateral, this Agreement or any accompanying note.

C. INSURANCE. Buyer shall at all times bear all risk of loss of, damage to or destruction of the Collateral. Buyer agrees to procure forthwith and maintain insurance on the Collateral, for the actual cash value thereof and for the life of this Agreement, in the form of Fire Insurance with Combined Additional Coverage and Collision, Theft and/or Vandalism and Malicious Mischief Coverage when appropriate, plus such other insurance as Seller may specify from time to time, all in form and amount and with insurers satisfactory to Seller. Buyer agrees to deliver promptly to Seller certificates or, if requested, policies of insurance satisfactory to Seller, each with a standard long-form loss-payable endorsement naming Seller or assigns as loss-payee as their interests may appear. Each policy shall provide that Seller's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Seller, and will contain insurer's agreement to give 30 days prior written notice to Seller before cancellation of or any material change in the policy will be effective, whether such cancellation or change is at the direction of Buyer or insurer. Seller's acceptance of policies in lesser amounts or risks shall not constitute a waiver of Buyer's foregoing obligation. Buyer assigns to Seller all proceeds of any physical damage or credit insurance for which a charge is stated herein or which is maintained by Buyer in accordance herewith, including returned and unearned premiums, up to the amount owing hereunder by Buyer. Buyer directs all insurers to pay such proceeds directly to Seller. Buyer authorizes Seller to endorse Buyer's name to all remittances without the joinder of Buyer.

D. FINANCING STATEMENT. If permitted by law, Buyer agrees that a carbon, photographic or other reproduction of this Agreement or of a financing statement may be filed as a financing statement. Buyer authorizes Seller to file a financing statement describing the Collateral. Buyer authorizes Seller to file financing statements covering assets of Buyer other than the Collateral described herein.

E. PERFORMANCE. If Buyer fails to perform any of its obligations hereunder, Seller may perform the same, but shall not be obligated to do so, for the account of Buyer to protect the interest of Seller or Buyer or both, at Seller's option, and Buyer shall immediately repay to Seller any amounts paid by Seller in such performance, together with interest thereon at the same rate as is set forth on the face hereof as payable upon acceleration.

F. DEFAULT. Time is of the essence in the performance of all obligations under this Agreement. An event of default shall occur if: (a) Buyer fails to pay when due any amount owed by it to Seller or to any affiliate of Seller, whether hereunder or under any other instrument or agreement; (b) Buyer fails to perform or observe any other obligation, term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Buyer to Seller or to any affiliate of Seller or otherwise acquired by Seller or any affiliate of Seller; (c) Buyer becomes insolvent or ceases to do business as a going concern; (d) any of the Collateral is lost, destroyed, or concealed from Seller; (e) Buyer makes an assignment for the benefit of creditors or takes advantage of any law for the relief of debtors; (f) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Buyer; (g) any property of Buyer is attached, or a trustee or receiver is appointed for Buyer or for a substantial part of its property, or Buyer applies for such appointment; (h) Seller in good faith believes that the prospect of payment or performance hereunder is impaired; or (i) there shall be a material change in the management, ownership or control of Buyer; (j) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by any governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentality's shall hereinafter be collectively referred to as "Governmental Authority"); (k) if anyone in the control, custody or possession of any Collateral or the Buyer is accused or alleged or charged (whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (l) the Buyer, if an individual, dies or is rendered incapacitated.

Buyer's Initials _____  Co-Buyer's Initials _____    Page 2 of 5

G. <u>REMEDIES</u>. Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Seller may, at its option, with or without notice to Buyer (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Buyer to Seller to be immediately due and payable, (iv) cancel any insurance and credit any refund to the indebtedness, and (v) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Buyer to assemble the Collateral and deliver it to Seller at a place to be designated by Seller which is reasonably convenient to Seller, and to lawfully enter any premises where the Collateral may be without judicial process and take possession thereof. If Seller elects to provide notice of default, said notice shall be mailed to Buyer's address on this loan Agreement or such other address as required by Section R. of this Agreement. Buyer agrees Seller may, at its option, install a global positioning locating device in the Collateral to assist Seller in locating and taking possession of the Collateral in the event of default. Acceleration of any and all indebtedness, if so elected by Seller, shall be subject to all applicable laws including those pertaining to refunds and rebates of unearned charges. Any property other than Collateral, which is in or upon the Collateral at the time of repossession, may be taken and held without liability until its return is requested by Buyer. Unless otherwise provided by law, any requirement of reasonable notice which Seller may be obligated to give regarding the sale or other disposition of Collateral will be met if such notice is mailed to Buyer at its address shown herein at least ten days before the time of sale or other disposition. Seller may buy at any sale and become the owner of the Collateral. The inclusion of a trade name or division name in the identification of Buyer hereunder shall not limit Seller's right, after the occurrence of an event of default, to proceed against all of Buyers' assets, including those held or used by Buyer individually or under another trade or division name. Buyer shall be liable for payment of all expenses of retaking, holding, preparing for sale, selling and the like which shall include (a) the reasonable fees of any attorneys retained by Seller, and (b) all other legal expenses incurred by Seller. Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of Collateral after default. Seller may sell the Collateral without giving any warranties as to the Collateral. Seller may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

H. <u>LOUISANA AND ARIZONA PROVISIONS</u>.

**LOUISIANA LAW PERMITS REPOSSESSION OF MOTOR VEHICLES WITHOUT JUDICIAL PROCESS. SELLER RESERVES THE RIGHT TO REPOSSESS THE COLLATERAL IN THE STATE OF LOUISIANA PURSUANT TO LOUISIANA'S "ADDITIONAL DEFAULT REMEDIES ACT," LA R.S. 6:965 ET SEQ.**

**If applicable, under Arizona Revised Statutes (A.R.S.) Section 13-1813, upon notice of default, Buyer has thirty (30) days to cure the default. If the default is not cured within thirty (30) days, it is unlawful to fail to return the collateral and it shall be considered stolen property subject to the maximum penalty for unlawful failure to return a motor vehicle subject to a security interest (AZ 28-4845 class 6 felony).**

I. <u>GENERAL</u>. Waiver of any default shall not be a waiver of any other default; all of Seller's rights are cumulative and not alternative. No waiver or change in this Agreement or in any related note shall bind Seller unless in writing signed by one of its officers. The term "Seller" shall include any assignee of Seller who is the holder of this Agreement. After assignment of this Agreement by Seller, the assignor will not be the assignee's agent for any purpose. Buyer waives and will not assert against any assignee of Seller any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Buyer could assert against Seller, except defenses which cannot be waived under the Uniform Commercial Code. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer waives all exemptions to the extent permitted by law. Seller may correct patent errors herein. All of the terms and provisions of this Agreement shall apply to and be binding upon Buyer, its heirs, personal representatives, successors and assigns and shall inure to the benefit of Seller, its successors and assigns. Buyer represents and warrants to Transport Funding, LLC, that he/she is authorized to execute this Agreement on behalf of Lessee/Buyer. In the event it is determined at a later date that the undersigned was not authorized to sign on behalf of Lessee/Buyer, the undersigned shall be personally liable for the return of the collateral to Transport Funding, LLC plus all damages incurred by Transport Funding, LLC, by reason of such misrepresentation, including but not limited to, its reasonable attorney fees, court costs and expenses. Buyer agrees to pay a processing and handling fee of $25.00 to Seller in the event of a dishonored check, or for reimbursement of the shipping and handling costs associated with an expedited release of the Buyer's certificate of title after termination of this agreement.

J. <u>CONFESSION OF JUDGMENT</u>. Buyer hereby confesses judgment, consenting that judgment be rendered and signed whether during term of court or in vacation, in favor of Seller for the full amount of the indebtedness in principal, finance charge, and attorney fees, together with all charges and expenses whatsoever, all as provided hereunder.

K. <u>ACCELERATION INTEREST</u>. Buyer agrees to pay Seller, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2 % per month if not prohibited by law, otherwise at the highest rate Buyer can legally obligate itself to pay and/or Seller can legally collect. Any note taken herewith evidences indebtedness and not payment. All amounts payable hereunder are payable at Seller's address shown below or at such other address as Seller may specify from time to time in writing.

L. <u>DELINQUENCY CHARGE</u>. For each installment not paid when due, Buyer agrees to pay to Seller a delinquency charge calculated thereon at the rate of 1 1/2% per month for the period of delinquency or, at Seller's option, 5% of such installment, provided that such a delinquency charge is not prohibited by law, otherwise at the highest rate Buyer can legally obligate itself to pay and/or Seller can legally collect.

M. <u>SECURITY INTEREST</u>. To secure payment of the UNPAID TIME BALANCE (Item 7), Seller retains title to and a security interest in the Collateral regardless of any retaking and redelivery of the Collateral to Buyer.

N. <u>CROSS SECURITY</u>. Buyer grants to Seller a security interest in the Collateral to Secure the payment and performance of all absolute and all contingent obligations and liabilities of Buyer to Seller, or to any assignee of Seller, now existing or hereafter arising, whether under this Agreement or any other agreement and whether due directly or by assignment; provided, however, upon any assignment of this agreement by Seller, the assignee shall be deemed for the purpose of this paragraph the only party with a security interest in the Collateral.

O. <u>DISCLAIMER</u>. There are no warranties other than those made by the manufacturer of the Collateral. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY OR FITNESS OF THE COLLATERAL FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, unless such warranties are in writing and signed by Seller. Seller shall not under any circumstances be liable for consequential damages, including, without limitation, lost profits, lost business expectancies, down time, rental expenses, transportation expenses, and/or lodging expenses alleged by

P. ADDITIONAL COVENANTS AND ORAL AGREEMENTS. THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Q. CHATTEL PAPER. This specific Security Agreement is to be sold and assigned only to TRANSPORT FUNDING, L.L.C. or its affiliates or subsidiaries ("TRANSPORT FUNDING, L.L.C.") and subject to the security interest of TRANSPORT FUNDING, L.L.C. The only copy of this Security Agreement which constitutes Chattel Paper for all purposes of the Uniform Commercial Code is the copy marked "ORIGINAL FOR TRANSPORT FUNDING, L.L.C." which shall be delivered to and held by TRANSPORT FUNDING, L.L.C. Any change in the name of the assignee of this Security Agreement from TRANSPORT FUNDING, L.L.C. shall render the copy of this Security Agreement so changed VOID and of no force and effect. No assignee or secured party other than TRANSPORT FUNDING, L.L.C. will under any circumstances acquire any rights in, under or to this Security Agreement or any sums due hereunder. Any assignment or transfer of this Agreement to any assignee or secured party other than TRANSPORT FUNDING, L.L.C. is invalid, unenforceable and violates the rights of TRANSPORT FUNDING, L.L.C.

R. PRIVACY WAIVER. Seller may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (herein collectively, the "Entity"), including, without limiting the generality of the foregoing, Seller's parent or any affiliate or any subsidiary of Seller and any credit reporting agency or other Entity whether or not related to Seller for any purpose, information about Buyer's accounts, credit application and credit experience with Seller and Buyer authorizes any Entity to release to Seller any information related to Buyer's accounts, credit experience and account information regarding the Buyer. This shall be continuing authorization for all present and future disclosures of Buyer's account information, credit application and credit experience on Buyer made by Seller, or any Entity requested to release such information to Seller. Buyer expressly consents to the recording of telephone communications between Buyer and Seller.

S. LOCATION OF BUYER. (i) If Buyer is a corporation, limited liability company, limited partnership or other registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement; (ii) if Buyer is an individual, his/her principal place of residence is at the address set forth immediately below its signature on the last page of this Agreement; (iii) if Buyer is an organization, its place of business or, if it has more than one place of business, its chief executive office, is located at the address set forth immediately below its signature on the last page of this Agreement. Buyer agrees that it will not, without the prior written consent of Seller, change its state of organization if it is a corporation, limited liability company, limited partnership or other registered organization or the location of its chief executive office or its place of business if it is an organization. If Buyer is an individual, Buyer must notify Seller in writing of a change in his/her principal place of residence 30 days prior to such change.

T. ALLOCATION OF PAYMENTS. All payments made by Buyer to Seller with reference to this Security Agreement shall be applied first to any indebtedness which is not secured, then to delinquency charges, then to interest, then to insurance payments, then to any other fees or other amounts payable hereunder other than the indebtedness secured by a purchase money security interest in the Collateral, until all of such indebtedness is paid in full, and then to the indebtedness secured by a purchase money security interest in the Collateral in the order in which that indebtedness was incurred. This provision controls over any conflicting provision or language in this Security Agreement or in any other agreement between Seller and Buyer unless the parties mutually agree in writing in a subsequent agreement to override this provision.

U. ELECTRONIC SIGNATURE AND AGREEMENT. BUYER AND SELLER AGREE TO USE ELECTRONIC MEANS TO EXECUTE THIS AGREEMENT IN THE FORM OF AN ELECTRONIC SIGNATURE. BUYER AND SELLER AGREE THAT THE ELECTRONIC RECORD OF THIS AGREEMENT RETAINED BY SELLER, A COPY OF WHICH BUYER ACKNOWLEDGES BUYER HAS RECEIVED, IS THE ORIGINAL AGREEMENT. BUYER AND SELLER AGREE THAT EITHER THE ELECTRONIC RECORD OF THE AGREEMENT CONTAINING THE ELECTRONIC SIGNATURES OF BUYER AND SELLER OR A PRINTED COPY OF THE AGREEMENT PRINTED FROM THE ELECTRONIC RECORD OF THE AGREEMENT RETAINED BY SELLER CONTAINING A PRINTED VERSION OF ELECTRONIC SIGNATURES OF THE BUYER AND SELLER CAN BE USED AS THE ORIGINAL AGREEMENT FOR ANY PURPOSE AT LAW OR IN EQUITY. SUCH PURPOSES WOULD INCLUDE, BUT NOT BE LIMITED TO, PROOF OF SEL

V. WAIVER OF JURY TRIAL, AND CONSENT TO JURISDICTION AND APPLICATION OF KANSAS LAW. BUYER AGREES THAT ANY LAWSUIT, CLAIM OR OTHER LITIGATION FILED BY BUYER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE COLLATERAL SHALL BE BROUGHT EXCLUSIVELY IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS, AND SHALL BE GOVERNED BY KANSAS LAW WITHOUT REGARD TO ANY STATE'S LAWS REGARDING CONFLICT OF LAWS. BUYER FURTHER AGREES THAT, IF SELLER DEEMS IT NECESSARY TO ENFORCE THE PAYMENT AND PERFORMANCE OF BUYER'S OBLIGATIONS UNDER THIS AGREEMENT, SELLER MAY FILE SUIT IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS, AND BUYER HEREBY STIPULATES TO THE JURISDICTION AND VENUE OF SUCH COURT. IN ANY SUCH LAWSUIT, CLAIM, OR LITIGATION ARISING OUT OF OR RELATING IN ANY MANNER TO THIS AGREEMENT AND/OR THE COLLATERAL, REGARDLESS OF WHETHER SUCH LAWSUIT, CLAIM, OR LITIGATION IS INITIATED BY SELLER OR BUYER, THE PARTIES HEREBY WAIVE THEIR RIGHT TO A TRIAL BY JURY AND AGREE THAT ALL CLAIMS, COUNTERCLAIMS AND CAUSES OF ACTION SHALL BE TRIED TO THE COURT.

W. RIGHT TO REVIEW/VOLUNTARY AGREEMENT. Buyer states that Buyer has had an opportunity to read and fully understands this Agreement. Buyer has further had an opportunity to discuss this Agreement with legal counsel of Buyer's choice regardless of whether or not it has chosen to do so. Buyer further represents and warrants to Seller that Buyer is voluntarily entering into this Agreement.

X. PRIVACY WAIVER & CERTIFICATION OF IDENTITY. BUYER HEREBY WAIVES BUYER'S RIGHT TO PRIVACY, AND AUTHORIZES THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION TO RELEASE ANY AND ALL INFORMATION RELATING TO BUYER TO TRANSPORT FUNDING, LLC, 8717 W. 110TH STREET, SUITE 700, OVERLAND PARK, KS 66210.

Y. RECORDING OF CONVERSATIONS. BUYER ACKNOWLEDGES THAT ALL TELEPHONE COMMUNICATIONS TO AND FROM SELLER MAY BE RECORDED BY SELLER. BUYER HEREBY CONSENTS TO SELLER RECORDING ANY SUCH COVERSATIONS.

Z. COMPLETE AGREEMENT. Buyer and Seller agree that this is a five-page agreement and each page hereof constitutes a part of this Agreement.

BUYER ACKNOWLEDGES THAT BY SIGNING THIS CONTRACT IT IS AWARE OF AND AGREES WITH ALL OF ITS TERMS AND CONDITIONS INCLUDING BUT NOT LIMITED TO, SECTION U, WAIVER OF JURY TRIAL, SECTION V, RIGHT TO REVIEW/VOLUNTARY AGREEMENT, SECTION W, PRIVACY WAIVER & CERTIFICATION OF IDENTITY, AND SECTION X, RECORDING OF CONVERSATIONS.

Buyer's Initials _[signature]_   Co-Buyer's Initials _[LW]_   Page 4 of 5

BUYER ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT BUYER IS AWARE OF AND AGREES WITH ALL OF ITS TERMS AND CONDITIONS INCLUDING BUT NOT LIMITED TO, SECTION U, ELECTRONIC SIGNATURE AND AGREEMENT, SECTION V, WAIVER OF JURY TRIAL, SECTION X, RIGHT TO REVIEW/VOLUNTARY AGREEMENT, SECTION X, PRIVACY WAIVER & CERTIFICATION OF IDENTITY, AND SECTION Y, RECORDING OF CONVERSATIONS.

NOTICE TO BUYER DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, YOU ARE ENTITLED TO A COPY OF THE AGREEMENT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE TIME PRICE DIFFERENTIAL.

| | |
|---|---|
| Dated | 7/25/2022 |
| Seller | ARROW TRUCK SALES, INC. |
| | (Name of individual, corporation or partnership) |
| By | *DocuSigned by: Carrie Shingleton*  Title  MANAGER |
| | (If corporation, authorized party must sign and show corporate title. If partnership, a general partner must sign. If owner or partner, show which.) |
| | 2931 SOUTH ROUTE 73 |
| | (Street Address) |
| | MAPLE SHADE, NJ 08052 |
| | (City, State and Zip Code) |

Buyer acknowledges receipt of a full and complete copy of this Agreement in the form of an electronic record.

Buyer: TERRANCE M WEBSTER
(Name of individual, corporation or partnership. Give trade style, if any, after name.)

Print Name: TERRANCE M WEBSTER
Title: INDIVIDUAL
Signature:
X *DocuSigned by: Terrance Webster* AEB360096B68438...

Print Name:
Title:
Signature:
X _____

Co-Buyer acknowledges receipt of a full and complete copy of this Agreement in the form of an electronic record.

Co-Buyer: LAWRENCE M WEBSTER JR
(Name of individual, corporation or partnership. Give trade style, if any, after name.)

Print Name: LAWRENCE M WEBSTER JR
Title: INDIVIDUAL
Signature:
X *DocuSigned by: Lawrence Webster* 708454461343470...

STATE OF ORGANIZATION/DOMICILE:

PENNSYLVANIA

Principal Residence/Chief Executive Office/Place of Business:

1137 S 56TH ST
(Street Address)

PHILADELPHIA,   PHILADELPHIA,   PENNSYLVANIA   19143
(City, County, State and Zip Code)

**TRANSPORT FUNDING**
*A Transport Funding Program*

# ASSIGNMENT AGREEMENT

For value received, the undersigned ("Assignor") hereby sells, assigns and transfers to TRANSPORT FUNDING, L.L.C., 14 Corporate Woods, Suite 700, 8717 W. 110th Street, Overland Park, KS 66210, its successors and assigns ("Assignee"), all Assignor's right, title and interest in and to (a) that Agreement dated 7/25/2022 between TERRANCE M WEBSTER ("Buyer") and Assignor which includes, without limitation, an item of Collateral, as defined herein, with the following serial number: 1XKYDP9X0HJ139121 (the "Security Agreement"), (b) any notes, guaranties and other documents executed in connection with the Security Agreement (herein, with the Security Agreement, called the "Documents"), (c) all amounts due and to become due under the Documents, (d) the property in which a security interest is granted or reserved by Assignor under the Security Agreement (the "Collateral"), and (e) all of Assignor's rights and remedies under or in connection with the Documents, including the right, without notice to Assignor and without affecting Assignor's liability hereunder: (i) to collect any and all amounts owing under the Documents, (ii) to endorse Assignor's name on any note or remittance received, (iii) to release or discharge the Buyer under the Security Agreement or any other persons obligated under the Documents, on terms satisfactory to Assignee, by operation of law or otherwise, (iv) to settle, compromise or adjust any and all rights against and to grant extensions of time of payment to Buyer or any other persons obligated under the Documents, and (v) to take any other action Assignor might take but for this assignment. Assignor warrants that: the Documents are genuine, enforceable and in all respects with what they purport to be; all signatures, names, addresses, amounts and other statements and facts contained in the Documents and herein are true and correct, the Collateral was sold in a bona fide time sale transaction; Buyer has paid the down payment in cash or as otherwise set forth in the Security Agreement, and no part thereof was loaned directly or indirectly by Assignor; the Collateral was delivered in satisfactory condition to Buyer on the date set forth below and was accepted by Buyer; any notice of insurance or certificate or policy thereof was or will be delivered to Buyer within the time required by law; all parties to the Documents have the capacity to contract and none of such parties is a minor; the security interest and reservations of title evidenced by the Security Agreement are valid, first, prior to all others and effective against all persons; Assignor has caused or will promptly cause such actions or procedures to be taken as are required or permitted by statute or regulation to perfect such security interest and reservation of title in Assignee's favor, including, without limitation, filing financing statements, recording documents and obtaining Certificates of Title disclosing Assignee's interest; Assignor has full title to and the right to sell and assign the Documents and the security interest and reserved title evidenced thereby, and this assignment conveys the same free and clear of all liens and encumbrances whatsoever; the Documents are and will continue free from defenses, counterclaims, cross-claims, and set-offs; and Assignor shall continue to be liable hereunder, notwithstanding Assignee's waiver of or failure to enforce any of the terms, covenants or conditions contained in the Documents or any release of, or failure on the part of Assignee to realize upon or protect, the Collateral or any lien thereon. If any of the foregoing warranties are untrue, regardless of Assignee's knowledge thereof or lack of reliance thereon, or if Assignor breaches any provision hereof, Assignor hereby unconditionally agrees to (i) indemnify and hold Assignee harmless from any losses, damages or claims arising therefrom, and (ii) purchase the Documents on written demand from Assignee for the balance remaining unpaid thereunder, plus any expenses of collection, repossession, transportation and storage, and reasonable attorneys' fees and court costs incurred by Assignee, less any customary refund by Assignee of unearned finance charges. ANY REASSIGNMENT OF THE DOCUMENTS AND/OR THE COLLATERAL BY ASSIGNEE SHALL BE WITHOUT RECOURSE OR WARRANTY OF ANY KIND. Assignor waives notice of acceptance hereof, presentment and demand for payment, protest and notice of non-payment, and subordinates all rights Assignor may now or hereafter have against Buyer to any rights Assignee may now or hereafter have against Buyer. Assignor shall have no authority to, and will not, without Assignee's prior consent, accept collections, repossess, substitute or consent to the return of the Collateral or modify the terms of the Documents.

The Collateral was delivered to Buyer on    7/25/2022

WITH RECOURSE: If Buyer fails to pay any payment on the Documents when due, or if Buyer is otherwise in default under the terms of the Documents, or if Buyer or Assignor becomes insolvent or makes an assignment for the benefit of creditors, or if a petition for a receiver or in bankruptcy is filed by or against Buyer or Assignor, then in any of such events Assignor will, without requiring Assignee to proceed against Buyer or any other person or any security, repurchase the Documents on written demand and pay Assignee in cash the balance remaining unpaid thereunder plus any expenses of collection, repossession, transportation and storage, and reasonable attorneys' fees and court costs incurred by Assignee, less any customary refund by Assignee of unearned finance charges. The terms and provisions of Seller's Assignment above the following described agreement are incorporated herein by reference:

_____    Assignor _____
(Identify specific agreement or, if none, show "None")            (Name of individual, corporation or partner)

Dated _____    By _____ Title _____
                                (If corporation, authorized party must sign and show corporate title. If
                                partnership, a general partner must sign. If owner or partners, show which.)

WITHOUT RECOURSE: This assignment is Without Recourse as to the financial ability of the Buyer to pay, except as provided in Seller's Assignment above or as may be otherwise provided in the following described agreement between Assignor and Assignee. The terms and provisions of Seller's Assignment above and the following described agreement are incorporated herein by reference.

_____    Assignor _____
(Identify specific agreement or, if none, show "None")            (Name of individual, corporation or partner)

Dated _____    By _____ Title _____
                                (If corporation, authorized party must sign and show corporate title. If
                                partnership, a general partner must sign. If owner or partners, show which.)

REPURCHASE: Assignor hereby agrees with Assignee that in the event of repossession of the Collateral Assignor on written demand will purchase the Security Agreement from Assignee at a place designated by Assignee for the balance remaining unpaid under the Security Agreement plus any expenses of collection, repossession, transportation and storage, and reasonable attorneys' fees and court costs incurred by Assignee, less any customary refund by Assignee of unearned finance charges, and will so purchase the Security Agreement even though Assignee may have waived full performance of the provisions of the Security Agreement by Buyer without Assignor's consent. The terms and provisions of Seller's Assignment above and the following described agreement are incorporated herein by reference.

SUBJECT TO THE ARROW TRUCK SALES, INC. / TRANSPORT
FUNDING, L.L.C. RETAIL FINANCE AGMT DATED 5-13-1998        Assignor    ARROW TRUCK SALES, INC.
(Identify specific agreement or, if none, show "None")                    (Name of individual, corporation or partnership)

                                    DocuSigned by:
                                    By *Carrie Shingleton*    Title    MANAGER
                                       5289A0A14BE04F7...
Dated    7/25/2022                (If corporation, authorized party must sign and show corporate title. If
                                partnership, a general partner must sign. If owner or partners, show which.)

# Exhibit "B"

Webster Jerome + Webster Jr. Lawrence    PO-858016-001

# COMMONWEALTH OF PENNSYLVANIA

## CERTIFICATE OF TITLE FOR A VEHICLE

427                                    FUEL: DIESEL

2225199900434-001

| 1XKYDP9X0HJ139121 | 2017 | KW | 85079366001 WE |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| TT | 0 | | MO | 9/07/22 | EXEMPT | 4 |
|---|---|---|---|---|---|---|
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROCD. DATE | ODOM. MILES | ODOM. STATUS |

| 9/07/22 | 9/07/22 | 17,500 | | 80,000 | |
|---|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

ODOMETER DISCLOSURE EXEMPT BY FEDERAL LAW
JOINT OWNERSHIP WITH RIGHTS OF SURVIVORSHIP
REGISTERED OWNER(S)

TERRANCE M WEBSTER &
LAWRENCE M WEBSTER JR
1137 S 56TH ST
PHILADELPHIA PA 19143

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
G = ORIGINALLY MFGD. FOR NON-U.S. DISTRIBUTION
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
P = IS/WAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
W = FLOOD VEHICLE
X = IS/WAS A TAXI

FIRST LIEN FAVOR OF:

TRANSPORT FUNDING LLC

SECOND LIEN FAVOR OF:

FIRST LIEN RELEASED_____ DATE_____

BY_____ AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

TRANSPORT FUNDING LLC
8717 W 110TH ST
SUITE 700
OVERLAND PARK KS 66210

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

SECOND LIEN RELEASED_____ DATE_____

BY_____ AUTHORIZED REPRESENTATIVE



**pennsylvania**
DEPARTMENT OF TRANSPORTATION

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

YASSMIN GRAMIAN P.E.
Secretary of Transportation

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO___ DAY___ YEAR___

SIGNATURE OF PERSON ADMINISTERING OATH

SIGN IN PRESENCE OF A NOTARY

STAMP OR SEAL

The undersigned hereby makes application for Certificate of Title to the vehicle described above, subject to the encumbrances and other legal claims set forth here.

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

SIGNATURE OF CO-APPLICANT/TITLE OF AUTHORIZED SIGNER

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

IF NO LIEN, CHECK ☐    IS THIS AN ELT? (IF YES, FIN REQUIRED)    YES ☐ NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY                             STATE          ZIP

IF NO 2ND LIEN, CHECK ☐    IS THIS AN ELT? (IF YES, FIN REQUIRED)    YES ☐ NO ☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

2ND LIENHOLDER NAME

STREET

CITY                             STATE          ZIP

8583970

**STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE**

# Exhibit "C"

**L.B.F. 3015.1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:   Webster, Terrance Maurice                          Chapter   13

                                                            Case No.   23-13269-amc

        Debtor(s)

# Chapter 13 Plan

☑ Original
☐ _____ Amended

Date:   12/04/2023

**THE DEBTOR HAS FILED FOR RELIEF UNDER**
**CHAPTER 13 OF THE BANKRUPTCY CODE**

**YOUR RIGHTS WILL BE AFFECTED**

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

**IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU**
**MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE**
**NOTICE OF MEETING OF CREDITORS.**

| Part 1: | Bankruptcy Rule 3015.1(c) Disclosures |
|---|---|

☐ Plan contains non-standard or additional provisions – see Part 9

☐ Plan limits the amount of secured claim(s) based on value of collateral – see Part 4

☐ Plan avoids a security interest or lien – see Part 4 and/or Part 9

| Part 2: | Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE* |
|---|---|

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan:**   60   **months.**

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee")   $181,500.00
Debtor shall pay the Trustee   $3,025.00   per month for   60   months and then
Debtor shall pay the Trustee _____ per month for the remaining _____ months;

**or**

Debtor shall have already paid the Trustee _____ through month number _____ and
then shall pay the Trustee _____ per month for the remaining _____ months.

1

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b)** Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d)** Other information that may be important relating to the payment and length of Plan:

**§ 2(e) Estimated Distribution:**

| | | | |
|---|---|---|---:|
| A. | Total Priority Claims (Part 3) | | |
| | 1. Unpaid attorney's fees | $ | 2,725.00 |
| | 2. Unpaid attorney's costs | $ | 0.00 |
| | 3. Other priority claims (e.g., priority taxes) | $ | 0.00 |
| B. | Total distribution to cure defaults (§ 4(b)) | $ | 0.00 |
| C. | Total distribution on secured claims (§§ 4(c) &(d)) | $ | 125,393.72 |
| D. | Total distribution on general unsecured claims (Part 5) | $ | 810.92 |
| | Subtotal | $ | 128,929.64 |
| E. | Estimated Trustee's Commission | $ | 18,150.00 |
| F. | Base Amount | $ | 181,500.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ 4,725.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

| Part 3: | Priority Claims |

**§ 3(a)** Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.

| Creditor | Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---:|
| Cibik Law, P.C. | | Attorney Fees | $2,725.00 |

**§ 3(b)** Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

2

## Part 4:  Secured Claims

**§ 4(a) Secured Claims Receiving No Distribution from the Trustee:**

☑ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

**§ 4(b) Curing default and maintaining payments**

☑ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim**

☐ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Prestige Financial Svc | | 2019 Mitsubishi Outlander Sport | $15,000.00 | 10.00% | $4,117.43 | $19,117.43 |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☐ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

The claims below were either (1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or (2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

(1) The allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. If the claimant included a different interest rate or amount for "present value" interest in its proof of claim, the court will determine the present value interest rate and amount at the confirmation hearing.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Transport Funding LLC | | 2017 Kenworth T680<br>VIN: 1XKYDP9X0HJ139121 | $110,393.72 | 10.00% | $30,302.93 | $140,696.65 |

**§ 4(e) Surrender**

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with _____ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of _____ per month, which represents _____ (***describe basis of adequate protection payment***). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by _____ (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5: General Unsecured Claims

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☐ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

| Creditor | Claim Number | Basis for Separate Classification | Treatment | Amount to be Paid by Trustee |
|---|---|---|---|---|
| Lincoln Technical Institute | | Student loans | | $0.00 |
| Lincoln Technical Institute | | Student loans | | $0.00 |

**§ 5(b) Timely filed unsecured non-priority claims**

*(1)* Liquidation Test *(check one box)*

☐ All Debtor(s) property is claimed as exempt.

☑ Debtor(s) has non-exempt property valued at $ __100.00__ for purposes of § 1325(a)(4) and plan provides for distribution of $ __810.92__ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows *(check one box)*

☑ Pro rata

☐ 100%

☐ Other (Describe) _____

## Part 6: Executory Contracts & Unexpired Leases

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

## Part 7: Other Provisions

**§ 7(a) General principles applicable to the Plan**

*(1)* Vesting of Property of the Estate *(check one box)*

☐ Upon confirmation

☐ Upon discharge

4

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

**§ 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence**

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

**§ 7(c) Sale of Real Property**

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

## Part 8:    Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1:** Trustee Commissions*
**Level 2:** Domestic Support Obligations
**Level 3:** Adequate Protection Payments
**Level 4:** Debtor's attorney's fees
**Level 5:** Priority claims, pro rata
**Level 6:** Secured claims, pro rata
**Level 7:** Specially classified unsecured claims
**Level 8:** General unsecured claims
**Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

*\*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.*

## Part 9:    Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

| **Part 10:** | **Signatures** |
|---|---|

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:     12/04/2023                                                                        /s/ Michael A. Cibik
                                                                                             Michael A. Cibik
                                                                                             Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date:     12/04/2023                                                                        /s/ Terrance Maurice Webster
                                                                                             Terrance Maurice Webster
                                                                                             Debtor

Date:                                                                                        
                                                                                             Joint Debtor